# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RITA KARLO, <br><br> Plaintiff, <br><br> v. <br><br> ST. AUGUSTINE COLLEGE, <br><br> Defendant. | Case No. 20-cv-5084 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rita Karlo ("Karlo") filed a four-count Complaint against her former employer, St. Augustine College ("the College"), in state court on March 20, 2020. The College removed this action to federal court on April 28, 2020. (Dkt. 1). Karlo alleges equal pay violations of the Illinois Equal Pay Act ("IEPA") of 2003, 820 I.L.C.S. 112/1 *et seq.* (Count I) and the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et seq.* (Count II), as well as retaliation in violation of the IEPA (Count III) and the EPA (Count IV). The College has moved to dismiss Counts I, II, and IV. (Dkt. 12). For the reasons stated herein, this partial motion to dismiss is granted in part and denied in part.

### I. Background

The following factual allegations are taken from the Complaint, (Dkt. 1, Ex. 1), and are accepted as true for the purposes of this motion. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Karlo, a woman, worked for the College from 1998 through 2017, first as an accounts payable administrator, and from

2002 onward as a teaching faculty member. Her employment was terminated in July of 2017.[1] She alleges that although she and "her male counterparts performed work that required substantially similar skill, effort and responsibilities" and "performed work under similar working conditions" her "male counterparts were paid at a higher rate." (Dkt. 1, Ex. 1, ¶¶ 12–15). Karlo offers one specific example, alleging that in 2017 she was paid "$4,000 less than fellow faculty member Juvenal Nava (before his promotion to Chair,) even though Karlo and Mr. Nava both had Master's Degrees and both had similar lengths of tenure at St. Augustine." (*Id.* at ¶ 15).

Karlo voiced her concerns about pay disparities between male and female employees to "various managers" at the College, including Dean Madeline Roman-Vargas, department Chair Juvenal Nava, President Andrew Sund, and Faculty Committee Chair Eddie Del Carmen. They each told her that the pay disparities were caused by the College's "financial trouble[s]." (*Id.* at ¶ 16). They also told Karlo that she in particular was being paid less because she was "working against them" by posting online about pay disparities and organizing other teachers in an effort to advocate for better working conditions. (*Id.* at ¶ 17). Although it is not clear when Karlo first raised the issue of pay inequality with her managers, she continued to "raise issues of gender inequity and salary disparities until the time of her termination in July of 2017." (*Id.* at ¶ 8).

---

[1] Karlo also alleges that she was terminated in May of 2017. (Dkt. 1, Ex. 1, ¶ 18). Viewing the Complaint in the light most favorable to the Plaintiff, the Court assumes the later date is correct.

2

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *See Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671

3

F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. Analysis

#### A. Counts I and II: Equal Pay Violations

The IEPA provides that employers may not "discriminate between employees on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions." 820 I.L.C.S. 112/10(a). The federal act is nearly identical in prohibiting an employer from "discriminat[ing] [. . .] between employees on the basis of sex by paying [unequal] wages". 29 U.S.C. § 206(d)(1). Claims brought under the IEPA and EPA are analyzed the same way. *See, e.g., Betts v. Option Care Enterprises, Inc.*, No. 18 CV 4023, 2019 WL 193914, at *9 (N.D. Ill. Jan. 15, 2019).

The College first argues Counts I and II should be dismissed based on their respective statutes of limitations. Second, the College argues that these Counts do not plausibly state claims for relief. And third, that they are too vague to put the College on notice of the charges it must answer.

*1. Statute of Limitations under the IEPA*

The statute of limitations for an equal pay violation under the IEPA is five years from the date of underpayment. 820 ILCS 112/30 ("Every such action shall be brought within 5 years from the date of the underpayment. For purposes of this Act,

4

'date of the underpayment' means each time wages are underpaid."). Karlo filed suit on March 20, 2020. Equal pay violations that took place more than five years before that date are not actionable under the IEPA. The Court dismisses Count I to the extent that it relies on time-barred allegations. As Karlo notes, this ruling will have very little practical effect until the damages phase of the trial. (Dkt. 16 at 3).

*2. Statute of Limitations under the EPA*

Parties agree that the EPA ordinarily has a two-year statute of limitations. 29 U.S.C. § 255(a). That period is extended to three years if the violation is "willful." *Id.* Karlo was terminated in July of 2017. The statute would run in July of 2019; however, Karlo argues that because the College acted willfully, the statute did not run until July of 2020. She filed suit in March of 2020. If Karlo establishes the College acted with intent, her pay disparity from March to July of 2017 will be actionable under the federal EPA.

A violation of the EPA is considered 'willful" if the defendant "either knew he was violating the [EPA] or was indifferent to whether he was violating it or not (and therefore 'reckless')." *E.E.O.C. v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The College argues that Karlo's allegations are conclusory, and that the Court need not credit them. (Dkt. 13 at 5). It is true that Karlo makes some conclusory allegations, saying that the College's violation was "willful" because it acted "with intent" to violate and/or "reckless disregard[ed]" of violating the EPA, and that the College "knowingly" violated that statute. (Dkt. 1, Ex. 1, ¶¶ 24–25). However, Karlo

5

also makes some very specific allegations about what the College knew. She says in her Complaint that she herself "raised concerns about her unequal pay with various managers at St. Augustine, including Dean Madeline Roman-Vargas, her supervisor Juvenal Nava, President Andrew Sund, and Faculty Committee Chair Eddie Del Carmen." (*Id.* at ¶ 16). These are some of the most important decisionmakers at the College, and Karlo put them on notice that they were paying men and women unequally. Karlo also alleges that she "continued to raise issues of gender inequity and salary disparities until the time of her termination" in 2017. *Id.* at ¶ 18. While it is not clear when the College first knew it was paying men and women unequally, it is clear that it was on notice for some portion of the relevant period between 2015 and 2017. Apparently, nothing was done to investigate or rectify the disparities Karlo described.

The fact that, when confronted, these managers denied paying women less than men because of their sex and proffered innocent explanations for pay disparities, (such as the College's "financial trouble") does not mean their alleged violations were not knowing or willful. *See, e.g., Heise v. Canon Sols. Am., Inc.*, No. 16 C 8284, 2018 WL 3533255, at *16 (N.D. Ill. July 23, 2018) (employer's explicit statement that they were trying *not* to pay women less than men "[did] not preclude a finding of willfulness" at the motion to dismiss stage). Karlo's allegations are sufficient to allege willfulness at the motion to dismiss stage.

### 3. Failure to state a claim

The College argues Karlo fails to state a claim under either the IEPA or the EPA because she has not alleged she was paid less *because of* her sex; because her named comparator, Juvenal Nava ("Nava"), did not have similar responsibilities as her during much of the relevant time period; and because the allegations about other unnamed "male counterpoints" are conclusory. Each argument is addressed in turn.

### a. Cause of Pay Disparities

Defendant asserts "Plaintiff must allege she was paid less specifically *because of* her gender." (Dkt. 18 at 4, emphasis added). This argument misunderstands the IEPA and EPA, which, unlike Title VII claims, do not require "discriminatory intent." *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998); *see also Melgoza v. Rush Univ. Med. Ctr.*, No. 17 CV 6819, 2020 WL 6565235, at *9 (N.D. Ill. Nov. 9, 2020) ("Unlike the EPA, Title VII requires plaintiff to show defendant's intent to discriminate."). In order to adequately plead a violation of the IEPA or the EPA, a female plaintiff need only plausibly allege "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017). The plaintiff does not have to "make a prima facie case of discrimination, just of unequal pay." *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 983 (N.D. Ill. 2014) (citing *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 822 (7th Cir.2011)).

Defendant cites only *Lauderdale v. Illinois Dep't of Hum. Servs.*, 876 F.3d 904, 907 (7th Cir. 2017), in support of its argument. But *Lauderdale* was reviewing an award of summary judgment, after the defendants had availed themselves of the statutory affirmative defense that the pay "differential [was] based on any other factor other than sex." *Id*. citing 29 U.S.C. § 206(d)(1). Therefore, the plaintiff in that case *did* have to prove that she was paid less because of her gender in order to *rebut* that affirmative defense. At the motion to dismiss stage, Karlo need only plausibly allege the elements of her claim, not anticipate affirmative defenses. And the *Lauderdale* court agreed that "[t]o establish a prima facie cause of action under the Act, an employee must demonstrate "a difference in pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Lauderdale*, 876 F.3d 904, 907 (7th Cir. 2017).

*b. Juvenal Nava*

Before considering whether Karlo can plausibly claim Nava was a comparator, the Court must rule on one procedural issue. Defendants have presented Karlo's 2017 EEOC charge to the Court because it contains certain facts and dates not found in the Complaint. Ordinarily, when a court considers documents beyond the pleadings at the motion to dismiss stage it must convert that motion to a motion for summary judgment. Fed. R. Civ. P. 12(d); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The College argues that because the EEOC charge is a public document the Court can take judicial notice of its contents. (Dkt. 18, fn. 1). They cite *GE Capital*

8

*Corp. v. Lease Resolution Corp.*, in support of this proposition. 128 F.3d 1074, 1080–81 (7th Cir. 1997) (courts are permitted to "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment"). This principal applies to EEOC charges. *See, e.g., Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) (an "IDHR charge is a public document and, therefore, the court may take judicial notice of the charge"); *Pierce v. Ill. Dep't of Human Servs.*, 128 Fed. Appx. 534, 535 (7th Cir. 2005) (district court appropriately considered "numerous documents [. . .] submitted by the parties from the administrative process" when deciding a motion to dismiss because they were "public records"). The Court will consider information contained in Karlo's EEOC charge for purposes of this motion to dismiss.

In the Complaint Nava is Karlo's primary example of a male faculty member who was (1) paid a higher wage (2) for equal work requiring substantially similar skill, effort, and responsibilities (3) under similar working conditions. She alleges "for example, Karlo was paid approximately $4,000 less than fellow faculty member Juvenal Nava (before his promotion to Chair) even though Karlo and Mr. Nava both had Master's Degrees and both had similar lengths of tenure at St. Augustine." (Dkt. 1, Ex. 1, ¶ 15). This allegation, combined with the more general allegations that male counterparts such as Nava "performed work that required substantially similar skill, effort and responsibility [. . .] under similar working conditions" appears sufficient at first glance. (*Id*. at ¶¶ 12–13). However, later Karlo acknowledges that

9

Nava was "her supervisor." (*Id*. at ¶ 16). In her EEOC charge Karlo also alleged that Nava was her "supervisor" as of (at the latest) August 19, 2016. (Dkt. 18, Ex. 1 at 1).

These conflicting allegations pose a problem for Karlo. Paragraph 15 of the Complaint strongly suggests that Nava was *only* a viable comparator before he was promoted to Chair.[2] According to the EEOC charge, Nava was promoted before August 19, 2016. The IEPA equal pay claims in Count I are time-barred before March of 2015 and her federal claims are limited to between March and July of 2017. Viewing these allegations in the light most favorable to the Plaintiff, Nava was a similarly situated male employee between March of 2015 and August 18, 2016 for purposes of the IEPA claim. But Karlo has not plausibly alleged that he was a similarly situated employee between his promotion on or before August 18, 2016 and her termination in July of 2017, during which time neither her EPA claims nor her IEPA claims were barred by the statutes of limitations.

*c. Other Comparators*

From August 18, 2016 through her termination in July of 2017, Karlo does not plausibly allege that she was paid less than male employees doing similar work under similar conditions. Her allegations about unnamed "male counterpoints" are simply that they performed work "that required substantially similar skill, effort and

---

[2] Karlo "need not show that she and her male comparator had the exact same job titles." *Betts v. Option Care Enterprises, Inc.*, No. 18-CV-4023, 2019 WL 193914, at *9 (N.D. Ill. Jan. 15, 2019) (citing *Fallon v. State of Ill.*, 882 F.2d 1206, 1208 (7th Cir. 1989)). But she must "show that she and her male comparator had 'substantially equal' duties." *Id*. Karlo does not describe her duties or Nava's duties (either before or after his promotion). Reading the Complaint in the light most favorable to the Plaintiff, the Court assumes the two shared responsibilities prior to his promotion but must conclude that his promotion to Karlo's supervisor corresponded to a change in his duties. Karlo's own Complaint, which only compares her earnings to Nava's "before his promotion to Chair" leads the Court to conclude that after the promotion he was no longer a comparable employee for purposes of EPA or IEPA claims.

10

responsibility [. . .] under similar working conditions." (*Id*. at ¶ 12–13). It is unclear from the Complaint whether these were faculty members, how much they were paid, what their work entailed, or under what conditions they worked. These conclusory allegations cannot bridge the time gap between Nava's promotion and Karlo's termination. They are the "bare recitation of the elements" of an EPA or IEPA cause of action, and therefore the Court is not obliged to credit them as true. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted). *See also, e.g., Wade v. Morton Bldgs., Inc.*, No. 09 CV 1225, 2010 WL 378508, at *4 (C.D. Ill. Jan. 27, 2010) (finding that although plaintiffs need not plead "unknown details" such as the names or salaries of specific colleagues, "[w]ithout some description of the comparable male's position and duties, as compared to Plaintiff's duties, no inference of plausibility arises to support her conclusion that the work was equal").

Counts I is dismissed without prejudice to the extent that it is based on allegations of unequal pay between the date Nava was promoted to Chair and Karlo's termination in July of 2017. Karlo has not plausibly alleged that she was paid less than any male colleague during that time. Count II is dismissed based on failure to allege the same during the pertinent time period. Karlo is free to file an Amended Complaint consistent with this opinion.

*4. Lack of Notice*

The College argues that Counts I and II should also be dismissed for lack of notice. The College was Karlo's employer from 1998 through 2017, including the

11

relevant period from 2015 through 2017. It should have a record of the "particular workweeks, months, years, or even the specific position she held when the alleged pay violations occurred"—information which the College says the Complaint is lacking. (Dkt. 13 at 6). Moreover, the Complaint states that Karlo was "[f]ull time Faculty [from] 2002 up until the time she was terminated." (Dkt. 1, Ex. 1, ¶ 9). That is a reasonably specific description of her position. The College is also presumably aware of the date on which her employment was terminated. Therefore the "extent, applicable time period, or alleged dates of underpayments," which it claims to be unsure of, ought to be obvious. (Dkt. 13 at 6). Moreover, the College attached Karlo's 2017 EEOC charge to *its own* reply brief. (Dkt. 18, Ex. 1). There can be no doubt that it has, for several years, had adequate notice of the nature of Karlo's grievances.

**B. Count IV: Retaliation under the EPA**

*1. Statute of Limitations*

The College argues that Count IV is barred by the statute of limitations for the same reason as Count II: Karlo's failure to allege willful violation of the EPA that would extend this statute. The Court rejects this argument for the reasons laid out above.[3]

---

[3] Karlo argues, in the alternative, that "nothing in the Equal Pay Act [. . .] specifically limits the claim of retaliation to a two-year statute of limitations." (Dkt. 16 at 4). She proposes no alternative statute of limitations, however, and district courts in the Seventh Circuit generally take it for granted that retaliation claims under the EPA are subject to the same statute of limitations as equal pay claims brought pursuant to that Act. *See, e.g., Akins-Brakefield v. Philip Env't Servs. Corp.*, No. 08 CV 710, 2010 WL 1032637, at *12 (S.D. Ill. Mar. 17, 2010) (ruling on retaliation and equal pay claims and holding that "a cause of action under the EPA has an applicable two-year statute of limitations, unless the cause of action arises out of a willful violation of the EPA"); *Righter v. Zuccarelli*, No. 09 CV 7563, 2010 WL 1980128, at *4 (N.D. Ill. May 17, 2010) (same).

12

*2. Failure to state a claim*

Karlo has alleged that she "raised concerns about unequal pay with various managers." (Dkt. 1, Ex. 1, ¶ 16). If this were her only allegation it would be insufficient, because, as the College notes, "[a] complaint about dissatisfaction with one's compensation in general does not trigger protection of the [EPA]." *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 986 (N.D. Ill. 2014). She must assert that she is being paid less than comparable *male* colleagues in a manner that is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335, 179 L. Ed. 2d 379 (2011) (addressing retaliation under the FLSA). Karlo's allegations, taken as true, indicate that she did so. The Complaint, read as a whole, makes it clear that the "concern about unequal pay" she raised with her managers, (Dkt. 1, Ex. 1, ¶ 16), was the concern that "*male* counterpoints were paid at a higher rate than Karlo." (*Id.* at ¶ 15, emphasis added). The fact that her managers responded by telling her why "male" colleagues earned more supports this inference. (Dkt. 1, Ex. 1, ¶ 17). And Karlo's allegations that she "continued to raise issues of *gender* inequity and *salary* disparities," (*Id.* at ¶ 18), and "engaged in protected conduct when she complained about being paid significantly less than her male counterparts," (*Id.* at ¶ 33), are further confirmation that she properly invoked her rights under the EPA when she spoke to her managers.

*3. But-for Causation*

Karlo must also allege that "but-for" her protected activity she would not have been subjected to an adverse action. *See, e.g., Heise v. Canon Sols. Am., Inc.*, No. 16 C 8284, 2018 WL 3533255, at *16 (N.D. Ill. July 23, 2018) (citing *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001)) (listing requirements to succeed on an EPA retaliation claim at summary judgment). She has done so, saying that because she "engaged in protected conduct when she complained about being paid significantly less than her male counterparts" the "Defendant intentionally retaliated against Plaintiff by placing her on probation and terminating her employment, and by refusing to remedy ongoing pay disparity." (Dkt. 1, Ex. 1, ¶ 33–34). Karlo cannot allege more than this without the benefit of discovery, and the Defendant presents no case law suggesting otherwise.

**IV. Conclusion**

For these reasons, Defendant's Motion to Dismiss (Dkt. 12) is granted in part and denied in part. Count I is dismissed in part and Count II is dismissed in its entirety, both without prejudice. The motion to dismiss is denied as to Count IV.

E N T E R:

Dated: May 27, 2021

*Mary M Rowland*

_____
MARY M. ROWLAND
United States District Judge

14